The Pennock Plantation, Inc. v. Commissioner.
Pennock Plantation, Inc. v. Commissioner
Docket No. 29193.
United States Tax Court
1951 Tax Ct. Memo LEXIS 77; 10 T.C.M. (CCH) 1077; T.C.M. (RIA) 51341; October 8, 1951
*77 R. Bruce Jones, Esq., Box 1111, West Palm Beach, Fla., for the petitioner. Thomas C. Cravens, Jr., Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Respondent has determined a deficiency of $5,372.82 in petitioner's excess profits tax for the taxable year ended July 31, 1944. This deficiency arose from the respondent's partial disallowance of the deduction claimed for rent and his disallowance of the deduction claimed as an expense incurred in repairing a private road. The petitioner contests both disallowances. In addition, it alleged as error the respondent's failure to treat the gain realized in the taxable year 1944 from the sale of cattle as a capital gain in determining petitioner's excess profits tax liability for that year. On brief, the respondent conceded that this gain is taxable as capital gain. Therefore, the issue is no longer before us. Findings of Fact During the taxable year ended July 31, 1944, the Pennock Plantation, Inc., a Florida corporation, hereinafter referred to as the petitioner, operated a fernery, nursery and a dairy at Jupiter, Florida. Its original and amended corporation income and declared value excess *78 profits tax returns for the taxable year ended July 31, 1944, were filed with the Collector of Internal Revenue for the District of Florida. The petitioner kept its books of account and prepared its Federal tax returns on the accrual basis of accounting. The land and buildings used by petitioner in the conduct of its businesses during the year in question were rented from Woodland Farms, Inc., hereinafter referred to as Woodland, and from the Pennock family. Woodland owned 680 acres of land which it purchased in an undeveloped state for approximately $17,000 upon its incorporation in 1936. Since that time and prior to the year in question, the property has been pastured and buildings have been erected thereon. The land and buildings have been rented to petitioner since 1936 under an oral lease pursuant to which petitioner was obligated to pay a "reasonable rent". The petitioner paid Woodland a rental of $100 per month from 1936 until the taxable year in question when the sum was increased to $300 per month. At the end of the taxable year in question the rental reverted to $100 per month and remained at that sum until 1947 when it was increased to $150 per month. The increase *79 to $300 per month was authorized by petitioner's board of directors and stockholders sometime during the taxable year in question when it was apparent that earnings were increasing substantially. The increase was made effective as of the beginning of that year. At the annual meeting held on August 7, 1944, the board of directors for the first time recorded their action in the corporate minutes as follows: "In view of the excellent record made during the past year, it was decided to pay Woodland Farms $3,600 for the past year." During the taxable period, the total capital stock of the petitioner and of Woodland was held as follows: No. of Shares in the
No. of Shares in
Stockholder
Pennock Plantation, Inc.
Woodland Farms, Inc.
Mrs. A. L. Pennock
397
25
Mr. L. V. Minear
5
25
Mr. Harry P. Jackson
1
25
Mr. A. E. Bassett
1
25
Total
404
100
The maximum rental petitioner was required to pay during the taxable year in question for the continued use and possession of the property rented from Woodland was not in excess of $1,200 per year. The petitioner also leased from Henry S. Pennock property which it used in the operation *80 of its business. This lease which was to run for 25 years from the date of its execution on August 6, 1917, contained the following provision: "On the expiration of this lease the property is to be given up in as good order in all respects as it now is including such substitution of stock, implements, crops, improvements, etc. as in the course of time must be made." The sole consideration or rental was $30,000, paid in advance, in petitioner's own capital stock. The fernery and nursery business was conducted on the property and until the rental of the property from Woodland, the dairy business also was conducted there. The lease expired on August 6, 1942. Neither the petitioner nor the lessor was aware of its expiration and no new lease agreement was entered into. The petitioner remained in possession of the property and for some time paid no rent for its use. It was still in possession at the time of the hearing. A hard surface road about a quarter of a mile in length is located on the property leased from Henry S. Pennock. The road is privately owned by the lessor and leads from a highway to the Pennock family home and to the packing house, granary, greenhouse, nursery, and *81 offices of the petitioner. It is the only entrance to the petitioner's place of business. It has at all times had a rock base and a "blacktop" surface consisting of an oil and sand mixture. The road was subject to considerable wear and tear because of the heavy commercial traffic servicing petitioner's business. The petitioner periodically made minor repairs but neglected to maintain the road in its original condition. During the taxable year in question the road was in a serious state of disrepair. The petitioner undertook and completed a major repair of the road during that year at a cost of $1,820. The entire road was recrowned and resurfaced. The materials used were the same or similar to those originally used in the building of the road and the basic construction remained the same. Upon completion of the project, the road was as before, a "blacktop" road with a rock base. The road was not extended or widened. The expenditure was made to maintain the road in an ordinarily efficient operating condition and represented an ordinary and necessary business expense incurred for repairs. Opinion ARUNDELL, Judge: The petitioner claimed a deduction of $3,600 for its taxable year *82 ended July 31, 1944, as rental paid to Woodland Farms, Inc., for the use of certain improved land and buildings. The respondent disallowed $2,400 of this sum and, on brief, argues, inter alia, that the petitioner has failed to establish that the sum in excess of $1,200 per year was a reasonable rental petitioner was required to pay as a condition to the continued use and possession of the property. Section 23(a)(1)(A) of the Internal Revenue Code. [1]
The property was rented by the petitioner from Woodland for $100 per month in 1936 and remained at that rate until some time during the year in question when it was increased *83 to $300 per month. The increase occurred after it became apparent that the petitioner's earnings were increasing substantially. The stockholders thereupon decided to pay an additional sum to Woodland. There is no evidence of when this additional sum was paid or accrued as liability on petitioner's books of account. At the end of the taxable year in question, the rental reverted to $100 per month and remained at that sum until 1947 when it was increased to $150 per month. The entire capital stock of both the petitioner and Woodland was held by the same four individuals. Three of them held only a nominal interest in the petitioner; each held an equal one-fourth interest in Woodland. Under these circumstances, it was incumbent upon the petitioner to establish that the disallowed portion of the rental deduction was reasonable in amount. Section 23 (a) (1) (A). Roland P. Place, 17 T.C. - (August 10, 1951). However, the only testimony submitted was that of the secretary-treasurer who held a nominal interest in the petitioner corporation. He expressed the view that $300 a month was a reasonable rental for that year. He offered no explanation of how he reached this conclusion and admitted *84 he had no knowledge of the rate at which comparable property was rented at that time. The petitioner has not submitted expert testimony or evidence of comparable rentals. Nor has it submitted a description of the land and buildings thereon or other adequate evidence of the value of the property during the year in question. In short, there is not sufficient evidence in the record to enable us to conclude that the entire sum claimed as rental expense, or any part thereof in excess of $100 per month, was reasonable in amount. We must, therefore, sustain the respondent's partial disallowance. Roland P. Place, supra. The second issue arises from the petitioner's attempt to deduct for the fiscal year ended July 31, 1944, the sum of $1,820 as an ordinary and necessary business expense incurred for the repair of a road. Respondent disallowed the deduction and argues on brief that the sum represented a capital expenditure. The property on which the road was located was leased to petitioner in 1917 for a 25-year term. The lease agreement obligated the petitioner to return the property "in as good order in all respects as it now is" upon expiration of the lease. The lease expired in 1942 *85 without either the petitioner or the lessor being aware of the expiration. The petitioner remained in possession and was still in possession at the time of the hearing. Throughout the years, the petitioner made a minimum of repairs, sufficient only to maintain the road in usable condition. Because of the failure to make adequate repairs, the road gradually deteriorated. During the year in question, the petitioner undertook and completed a major repair of the entire road at a cost of $1,820. The basic construction of the road remained unchanged, and the materials used were the same or similar to those used in the original construction. The road was not lengthened or widened. It is also significant that the $1,820 expenditure related to the entire road, which was about one-fourth of a mile in length and in need of considerable repair. We think it is clear from the facts as found and other evidence submitted by the petitioner that this sum was expended merely to maintain the road in an ordinarily efficient operating condition. We conclude, therefore, that the sum was expended for the repair of business property and is deductible as an ordinary and necessary business expense. Section *86 23 (a) (1) (A). Illinois Merchants Trust Co., Executor, 4 B.T.A. 103. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or business expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business; * * * and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩